UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>PRINCEPS INTERFACE TECHNOLOGIES LLC, et al.,<br><br>    Defendants. | Case No. 19-cv-06352-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS FOR INDIRECT AND WILLFUL INFRINGEMENT WITH LEAVE TO AMEND**<br><br>Docket No. 39 |

This action is related to a patent for a portable version of the traditional two-handed QWERTY keyboard (U.S. Patent No. 6,703,963, "the '963 patent"). On June 14, 2019, Princeps Interface Technologies ("Princeps I") filed a complaint alleging infringement of its '963 patent in the District of Delaware against Apple, Inc. ("Apple"). Princeps I voluntarily dismissed the action without prejudice on October 4, 2019. Apple now brings suit against Princeps I and Princeps Secundus LLC ("Princeps II," the new assignee of the '963 patent) in this Court, seeking a declaratory judgment of noninfringement of the '963 patent. Princeps II has filed counterclaims for infringement of the '963 patent. Currently pending before the Court is Apple's motion to dismiss Princeps II's willful and indirect infringement counterclaims under Federal Rule of Civil Procedure 12(b)(6). Given Princeps II's conclusory counterclaims, the Court hereby **GRANTS** Apple's motion to dismiss Princeps II's willful, induced, and contributory infringement claims **with leave to amend**.

## I.     BACKGROUND

Princeps I was formed on May 9, 2019, and shortly thereafter it purported to be the owner by assignment of the '963 patent. Docket No. 1 ("Apple Compl.") at 5; No. 3:19-cv-06566-EMC

("Google Action") Docket No. 50 ("Google Mot.") at 2. The '963 patent invention "provide[d] a multifunctional input device:" it allowed for multiple "functional mode[s]," each with one or more of its own "domain levels," so that users could use the same key to enter multiple different inputs. Docket No. 33 ("Princeps Apple Ans.") at 9.

On June 14, 2019, Princeps I filed an action for '963 patent infringement against Apple in the District of Delaware. Docket No. 39 ("Apple Mot.") at 2. The parties eventually filed a stipulation of dismissal without prejudice on October 4, 2019, under Rule 41(a)(1). Apple Mot. at 2. Apple filed the present action in this Court on the same day. Apple Mot. at 2. In late November 2019, the '963 patent was reassigned to Princeps II (which had just been incorporated on September 30, 2019). Google Mot. at 3. On January 8, 2020, Princeps II answered Apple's complaint and filed a countercomplaint against Apple for infringement of the '963 patent. *See generally* Princeps Apple Ans. In the countercomplaint, Princeps II alleges the following claims: (1) direct infringement; (2) willful infringement; and (3) indirect infringement under theories of induced infringement and contributory infringement. *Id.* at 11-13. It accuses Apple's "information input devices"—including "iPhones, iPads and iPods, with proprietary and third-party software and with an operating system such as the Apple iOS operating system" —of infringement. *Id.* at 11. Apple now moves to dismiss Princeps II's willful and indirect infringement counterclaims under Federal Rule of Civil Procedure 12(b)(6). *See generally* Apple Mot.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true

and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

### III. MOTION TO DISMISS

A. Willful Infringement

Apple seeks to dismiss Princeps II's counterclaim of willful infringement. Apple Mot. at 7. Princeps II counters by alleging that, since the Delaware action's filing in June 2019, Apple has implemented software updates "in an attempt to construct a defense of non-infringement." Princeps Apple Ans. Ex. A-2 at 1.

In the patent infringement context, willfulness is relevant to damages calculations. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932-33 (2016). Per the Supreme Court in *Halo*, courts should generally only award enhanced damages under §284 of the Patent Act in "egregious cases typified by willful misconduct." *See id.* at 1934. These increased damages "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," *i.e.* behavior that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 1932. Both the Federal Circuit and this District have held that "attempts to design around and avoid the patent or any other factors tending to show good faith[] should be taken into account [in the enhanced damages analysis] and given appropriate weight." *Telemac Corp. v.*

---

[1] A court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

3

*US/Intelicom Inc.*, 185 F. Supp. 2d 1084, 1102 (N.D. Cal. 2001) (quoting *SRI Int'l, Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997)); *see also Toro Co. v. Ariens Co.*, Nos. 99-1285, 99-1307, 2000 U.S. App. LEXIS 8253, 28 (Fed. Cir. Apr. 27, 2000) (finding that "designing around" is "an activity that the patent system encourages"). Since *Halo*, courts in this District have required willful infringement claims to show both "knowledge of the . . . [p]atents" **and** "'egregious' conduct" in order to survive a motion to dismiss. *See, e.g., Finjan, Inc. v. Cisco Sys.*, No. 17-cv-00072-BLF, 2017 U.S. Dist. LEXIS 87657, 14 (N.D. Cal. June 7, 2017) ("even if Finjan had adequately alleged that Cisco had pre-suit knowledge of the Asserted Patents, dismissal would also be warranted because the [First Amended Complaint] . . . does not contain sufficient factual allegations to make it plausible that Cisco engaged in 'egregious' conduct").

*Finjan* is instructive. In *Finjan*, this District dismissed plaintiff Finjan's willful infringement claims with leave to amend because Finjan had failed to show that defendant Cisco had engaged in "egregious conduct." *Id.* at 16. Finjan alleged Cisco willfully infringed five of its patents. *Id.* at 2. Finjan also alleged that Cisco had "made multiple substantial financial investments in Finjan" for at least thirteen years and had "continued to gain knowledge about Finjan and its patents and patent technology" during this period. *Id.* at 6. Finjan argued that Cisco was "willfully, wantonly, and deliberately engag[ing] in acts of infringement . . . justifying an award to Finjan of increased damages" because, "despite knowledge of Finjan's patent portfolio," it "ha[d] sold and continue[d] to sell the accused products . . . in complete disregard of Finjan's patent rights." *Id.* at 7. The court found that Finjan had not plausibly shown either of willful infringement's two elements (*i.e.*, knowledge and egregiousness). *Id.* at 12-15. On the knowledge element, the court emphasized that Finjan's evidence at most showed that Cisco had known of Finjan's portfolio and did not illustrate that Finjan had known of the particular patents at issue. *Id.* at 13-14. Additionally, even if Finjan **had** plausibly plead the first element, Finjan failed to show the egregious conduct element. *Id.* at 15. Finjan had made "no specific factual allegations about Cisco's subjective intent, or any other aspects of Cisco's behavior that would suggest its behavior was 'egregious.'" *Id.* "Instead," the court observed, "Finjan has simply made conclusory

4

allegations of knowledge and infringement, which, considered in the totality of circumstances here, is not enough to plausibly allege 'egregious[ness].'" *Id.* The court thus dismissed the willful infringement claim. *Id.* at 16.

In its willful-infringement counterclaim against Apple, Princeps II alleges that "[o]n information and belief, since at least the time it received notice by the earlier Complaint referenced above, Apple's infringement has been and continues to be willful." Princeps Apple Ans. at 13. As additional support in its opposition, Princeps II points to the fact that since Princeps I's original Delaware complaint was filed in June 2019, Apple has "updated the software on its phones in an attempt to construct a defense of non-infringement regarding the '963 patent." Princeps Apple Ans. Ex. A-2 at 1. Specifically, it claims that "the Globe and Emoji symbols . . . no longer appear in the same precise locations;" now, "only the Globe appears consistently in the lower left corner and only the Globe button (no representations of an Emoji appears) is utilized as the domain control." *Id.* at 8. In response, Apple emphasizes the conclusory nature of Princeps II's counterclaim and argues that even if Princeps has shown knowledge, it has failed to plausibly plead the egregious conduct element of willful infringement. Docket No. 47 ("Apple Reply") at 2.

Given Princeps I's June 2019 Delaware action, Princeps II has met the knowledge element. As Apple itself acknowledges, Princeps I's Delaware complaint specifically names the same '963 patent at issue in the present suit. Apple does not explicitly contest this point in its briefing.

However, Princeps II does not plausibly show with specificity that Apple's conduct was egregious. First, Princeps II alleges no particular facts establishing egregious conduct. Indeed its brief focuses only on Apple's knowledge of the '963 patent. *See generally* Princeps Apple Ans. at 13; Docket No. 45 ("Princeps Apple Opp.") at 4-5. The only fact Princeps II alleges in support of its assertion of egregiousness is Apple's post-June-2019 software update removing the Emoji icon from the keyboard. Princeps Apple Ans. Ex. A-2 at 8. But this update does not establish egregious conduct. If Apple implemented this change in response to Princeps II's claims of infringement as a design around, this would tend to help rather than hurt Apple's case because as *Toro* asserted, this "designing around" is "encourage[d]" by the patent system and would show Apple's good faith attempt to avoid infringement. *See Toro*, 2000 U.S. App. LEXIS 8253 at 28;

5

*see also Telemac*, 185 F. Supp. 2d at 1102 (quoting *SRI*, 127 F.3d at 1465).

The Court thus **GRANTS** Apple's motion to dismiss Princeps II's willful infringement claim **with leave to amend** (since, as in *Finjan*, Princeps II "has not yet sought leave to amend," so "[it] is not clear, at this early stage in the case, that amendment would be futile"). *See id.* at 16. If Princeps II amends its pleading, it must plead specific factual allegations of egregious conduct, that it can under Rule 11, to pursue a viable willful infringement claim.

B.  Indirect Infringement

Apple also moves to dismiss Princeps II's counterclaim of indirect infringement. Princeps II alleges indirect infringement on two separate theories: (1) inducement, and (2) contributory infringement. Princeps Apple Ans. at 12. Apple contests both theories. *See generally* Apple Mot. at 4-7.

    1.  Inducement Infringement

35 U.S.C. § 271(b) states: "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Per the Supreme Court, "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). Thus, a party claiming induced infringement must show "first that there has been direct infringement, and second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Cap Co., Ltd. v. McAfee, Inc.*, No. 14-cv-05068-JD, 2015 U.S. Dist. LEXIS 83522, 8 (N.D. Cal. June 26, 2015) (quoting *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005)). A defendant can meet the knowledge requirement if it has actual knowledge, *i.e.* both (1) "knew of the patent" ***and*** (2) "knew as well that 'the induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Sys.*, 135 S. Ct. 1920, 1927 (2015). Courts have acknowledged, though, that "[a] reasonable, good-faith belief in noninfringement can negate the specific intent required for induced infringement." *In re Biogen '755 Patent Litig.*, 335 F. Supp. 3d 688, 714 (D.N.J. 2018) (citing *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1367-68 (Fed. Cir. 2013), *vacated and remanded on other grounds*, 135 S. Ct. 1920 (2015)).

United States District Court
Northern District of California

This court addressed analogous cases which are instructive here. First, in *Cap*, this court dismissed an inducement infringement claim in part because it failed to sufficiently plead specific intent. *Cap*, 2015 U.S. Dist. LEXIS 83522 at 15. There, patentee CAP alleged induced infringement on the grounds that the accused products were "sold directly to customers and used by them pursuant to [defendant's] user manual guides, and support articles." *Id.* at 8-9. The court noted that a patentee need only "cite examples where the accused infringer advertised benefits that can be achieved only through use of the asserted patent" to plausibly plead specific intent under 12(b)(6). *Id.* at 16. CAP, however, had failed to meet even this bar: "CAP ma[d]e[] passing references to 'user manual guides, and support articles,' without ever saying what those materials contain, which [wa]s wholly inadequate for an inference of specific intent." *Id.* at 16. The court thus dismissed the induced infringement claim. *Id.* at 16.

In *Hypermedia Navigation v. Google LLC*, No. 18-cv-06137-HSG, 2019 U.S. Dist. LEXIS 56803, 3-8 (N.D. Cal. Apr. 2, 2019), the court dismissed an induced infringement claim because the patentee had failed to plausibly show specific intent. Hypermedia's inducement claim against defendant Google "only state[d] bald conclusions that an end user following YouTube instructions results in infringement." *Hypermedia*, 2019 U.S. Dist. LEXIS 56803 at 7. Hypermedia, the court noted, "in no way . . . detail[s] *how* an end user would infringe Hypermedia's patents by following instructions in the links provided in the complaint." *See id*. at 8. The court thus dismissed Hypermedia's induced infringement claim because "this is exactly the situation addressed in *CAP*, as Hypermedia only 'ma[d]e[] passing references . . . without ever saying what those materials contain.'" *See id.* at 8 (quoting *Cap*, 2015 U.S. Dist. LEXIS 83522 at 16).

Princeps II's induced infringement counterclaim against Apple alleges the following:

> 26. Upon information and belief, since at least the time of receiving this Complaint, Apple has induced and continues to induce others to infringe at least claims 1, 2, 3, 9, 12 and 60 of the '963 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Apple's partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claims 1, 2, 3, 9, 12 and 60 of the '963 patent.
>
> 27. Apple's actions that aid and abet others such as their partners and customers to infringe include distributing the Accused

7

> Instrumentalities and providing instructional materials and/or services related to the Accused Instrumentalities. On information and belief, Apple has engaged in such actions with specific intent to cause infringement and with willful blindness to the resulting infringement because Apple has had actual knowledge of the '963 patent and that its acts were inducing infringement of the '963 patent since at least June 18, 2019, as referenced in Paragraph 24 above.[2]

Princeps Apple Ans. at 12.

Like the *Cap* and *Hypermedia* patentees, Princeps II has made insufficient allegations of specific intent to survive a motion to dismiss. *See Cap*, 2015 U.S. Dist. LEXIS 83522 at 16; *Hypermedia*, 2019 U.S. Dist. LEXIS 56803 at 8. Princeps II's general and imprecise references to "instructional materials and/or services related to the Accused Instrumentalities" echo CAP's insufficiently specific "passing references to 'user manual guides, and support articles.'" *See Cap*, 2015 U.S. Dist. LEXIS 83522 at 16. Like CAP, Princeps II does not "ever say[] what those materials contain"—indeed, it does not even provide specific instructional materials or services as examples—which, as in *Cap*, should be considered "wholly inadequate for an inference of specific intent." *See id.* Princeps II's allegations are not even as specific as Hypermedia's; Hypermedia at least pointed to specific instructions "in links provided in the complaint." *See Hypermedia*, 2019 U.S. Dist. LEXIS 56803 at 8. Further, Apple, in filing an action seeking a declaratory judgment of noninfringement, arguably asserts a "reasonable, good-faith belief in noninfringement," which "can negate the specific intent required for induced infringement." *See Biogen*, 335 F. Supp. 3d at 714 (citing *Commil*, 720 F.3d at 1367-68). Princeps II has not made a convincing case to the contrary.

The Court hereby **GRANTS** Apple's motion to dismiss this counterclaim **with leave to amend**. In its amended pleading, Princeps II must allege facts that plausibly demonstrate Apple's specific intent.

2. Contributory Infringement

To state a claim for contributory infringement under 35 U.S.C. § 271(c), a patentee must

---

[2] "Accused Instrumentalities" are "information input devices such as Apple's iPhones, iPads and iPods, with proprietary and third-party software and with an operating system such as the Apple iOS operating system." Princeps Apple Ans. at 11.

8

show that a party:

> sells, or offers to sell, "a component of a patented . . . combination, . . . or a material . . . for use in practicing a patented process[] constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use."

*Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1356 (Fed. Cir. 2018) (quoting 35 U.S.C. § 271(c)); *see also Uniloc USA, Inc. v. Logitech, Inc.*, No. 18-CV-01304-LHK, 2018 U.S. Dist. LEXIS 197194, 8 (N.D. Cal. Nov. 17, 2018).

In *Logitech*, this court dismissed Uniloc's contributory infringement claim because it "fail[ed] to provide factual underpinnings for its allegations that there are no substantial noninfringing uses of the accused devices." *Logitech*, 2018 U.S. Dist. LEXIS 197194 at 9. Uniloc's factual support for this claim stated only that defendant Logitech "kn[e]w[] that portions of the Accused Infringing Devices [we]re especially made or especially adapted for use in infringement of the . . . patent . . . and [we]re not a staple article or a commodity of commerce suitable for substantial noninfringing use when used as described above." *Id.* at 8-9. The court found this "fleeting reference" unconvincing as it "merely paraphrase[d] the contributory infringement statute." *Id.* at 9. As such, the court concluded that Uniloc had failed to meet Rule 8's pleading standards and thus dismissed the contributory infringement claim. *Id.* at 10; *see also UNILOC USA, Inc. v. Apple Inc.*, No. C 18-00359 WHA, 2018 U.S. Dist. LEXIS 76226 (N.D. Cal. May 2, 2018) (dismissing a contributory infringement claim where the patentee also alleged a "merely formulaic recitation of Section 271(c) not entitled to the presumption of truth").

Princeps II's contributory infringement counterclaim against Apple alleges:

> 28. Upon information and belief, Apple is liable as a contributory infringer to at least claims 1, 2, 3, 9, 12 and 60 of the '963 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States input device technology, such as the [sic] Apple's iPhones, iPads and iPods, with proprietary and third-party software and with an operating system such as the Apple iOS operating system which are especially made or adapted for use in an infringement of the '963 patent. The Accused Instrumentalities are material components for use in practicing the '963 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

9

1 Princeps Apple Ans. at 12.  Apple contends this on the ground it "simply parrots the elements of
2 [the contributory infringement] standard without any factual support."  Apple Mot. at 4.  Princeps
3 II does not explain "how or why Apple knows that the accused products 'are specifically made and
4 are not a staple article of commerce suitable for substantial non-infringing use.'"  *Id.*  Apple
5 asserts that its products use a QWERTY keyboard which, Apple argues, is a substantial non-
6 infringing use; Princeps II acknowledged the keyboard was art prior to the '963 invention.  *Id.*

Princeps II's contributory infringement counterclaim mirrors *Logitech*'s conclusory claim.  *See Logitech*, 2018 U.S. Dist. LEXIS 197194 at 10.  As in *Logitech*, Princeps II's counterclaim "merely paraphrases the contributory infringement statute" and presents no "factual underpinnings" to support its allegation that Apple knew its products were not a staple article of commerce capable of substantial non-infringing use.  *See id.* at 9.  In its opposition, the only additional argument that Princeps II provides is that the Court should consider "the totality of underlying relevant factual allegations."  Princeps Apple Opp. at 6.  However, it does not point to any specific portions of its countercomplaint to give meaning to this vague and ill-defined reference.  *Id.*  Like Uniloc in *Logitech*, Princeps II has failed to meet Rule 8's pleading standards.  The Court **GRANTS** Apple's motion to dismiss this counterclaim **with leave to amend**.  In order to proceed, Princeps II's amended counterclaim must plausibly allege with specificity, *inter alia*, that Apple knew its products were not staple articles of commerce capable of substantial non-infringing use.

///
///
///
///
///
///
///
///
///

## IV. CONCLUSION

Given Princeps II's conclusory counterclaims against Apple, the Court **GRANTS** Apple's motion to dismiss the willful, inducement infringement, and contributory infringement counterclaims with **leave to amend**. Any such amendment must comply with Fed. R. Civ. P. 11 and be filed within thirty (30) days from the date of this order.

This order disposes of Docket No. 39.

**IT IS SO ORDERED**.

Dated: March 26, 2020

EDWARD M. CHEN
United States District Judge

11